UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TIM RADECKI,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>BANK OF AMERICA, N.A., *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 2:22-cv-01726-ART-EJY<br><br>ORDER |

    This case involves a dispute over the validity of the parties' claim to title over a property located in Las Vegas, Nevada. On December 1, 2023, Defendants recorded a Notice of Sale and scheduled a foreclosure sale of the property for January 12, 2024. (ECF No. 62, Ex. 5.) Before the Court are Plaintiff Tim Radecki's Emergency Motions for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 62, 63) seeking to enjoin the foreclosure. Because federal law precludes the injunctive relief Plaintiff requests, the Court denies Plaintiff's Emergency Motions.

**I.　FACTUAL AND PROCEDURAL HISTORY**

    Non-party borrowers purchased the property at issue, 6507 Copper Smith Court, North Las Vegas, NV 89084, in March of 2008, subject to a mortgage held by non-party Countrywide Bank FSB in the amount of $179,550. (ECF No. 62, Ex. 1, 2.) The next month, Fannie Mae acquired the loan, which it continues to own today. (ECF No. 67, Ex. 3.) Defendant Bank of America, N.A. ("BANA") is the loan servicer for Fannie Mae and the current beneficiary of record of the Deed of Trust. (ECF No. 67, Ex. 4.)

    The borrowers became delinquent on their loan in 2009. (ECF No. 67, Ex. 5.) Three Notices of Default were recorded against the property in 2010. (*Id.*) The borrowers filed for bankruptcy in 2011, listing the property as one of their assets. (ECF No. 67, Ex. 8.) The bankruptcy court issued a bankruptcy discharge as to the borrowers on June 1, 2011. (ECF No. 67, Ex. 9.)

Because the borrowers also failed to pay HOA assessments, the HOA foreclosed on the property in 2013. (ECF No. 67, Ex. 10, 11.) Plaintiff purchased the property at the HOA foreclosure sale for $29,000. (ECF No. 67, Ex. 11.)

In 2014, Plaintiff commenced a quiet-title action against BANA and recorded a lis pendens against the property, arguing that the HOA sale extinguished the Deed of Trust held by BANA. (ECF No. 67, Ex. 12.) The state court disagreed, finding the Plaintiff's arguments failed because of the Housing and Economic Recovery Act's ("HERA") Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3). (ECF No. 67, Ex. 3.) In 2020, the Nevada Supreme Court affirmed the judgment. (ECF No. 67, Ex. 13.)

The current litigation stems from the 2022 Notice of Default recorded against the property following the conclusion of the prior quiet-title action and the lifting of COVID restrictions. (ECF No. 67, Ex. 4.) In September of 2022, Plaintiff filed this action in state court and recorded a lis pendens against the property. (ECF No. 1-1; ECF No. 67, Ex. 14.) BANA subsequently removed the action to this Court. (ECF No. 1.)

On December 1, 2023, Defendants recorded a Notice of Sale and scheduled a foreclosure sale of the property for January 12, 2024. (ECF No. 62, Ex. 5.) The Notice of Sale provided that the amount in delinquency was $421,739.44. (*Id.*) A payoff statement BANA provided to Plaintiff on December 13, 2023 reflects a slightly different total of $423,884.82. (ECF No. 67, Ex. 16.)

On December 27, 2023, Plaintiff filed Emergency Motions for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 62, 63) seeking to enjoin the foreclosure. Defendants filed their responses on January 3, 2024. (ECF Nos. 67, 68.) The Court held an oral argument on the motions on January 5, 2024.

**II.  DISCUSSION**

Factually, this case is typical of many actions for quiet title concerning homes in Nevada bought and sold at HOA foreclosure auctions during the fallout

of the 2008 housing crisis. Plaintiff purchased the property at issue here in a HOA foreclosure sale for $29,000. In state court, the parties litigated the validity of Defendants' Deed of Trust following Plaintiff's purchase, and Defendants prevailed on summary judgment. Plaintiff then filed this action principally arguing that Defendants' interest in the property was extinguished by operation of NRS 106.240.

This Court recently decided a case with strikingly similar facts: *SFR Invs. Pool 1, LLC v. Nationstar Mortg. LLC*, No. 2:22-cv-2035-ART-BNW, 2023 WL 6311468 (D. Nev. Sept. 27, 2023). In *SFR Invs. Pool 1*, the Court denied injunctive relief preventing foreclosure, finding that HERA includes an "anti-injunction" provision that prohibited the relief the plaintiff sought. *See* 12 U.S.C. § 4617(f). Because the facts of this case are sufficiently analogous, the Court makes the same finding here.

Restraining orders and preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The legal standard for obtaining a temporary restraining order and the legal standard for obtaining a preliminary injunction are "substantially identical." *See Stuhlbarg Intern. Sales Co. v. John D. Bush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), *overruled on other grounds by Winter*, 555 U.S. at 20. The Supreme Court clarified the standard for these forms of equitable relief in *Winter*, instructing that the plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction [or restraining order] is in the public interest." 555 U.S. at 20. The Ninth Circuit also recognizes an additional standard: "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter*

factors are satisfied.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Before addressing the *Winter* factors, there is a threshold jurisdictional question because the loan at issue here is owned by Fannie Mae. Neither party contests that Defendants' interest in the property is owned by Fannie Mae. (ECF No. 67, Ex. 3.) As a response to the 2008 housing crisis, "Congress passed the Housing and Economic Recovery Act of 2008 ('HERA'), which . . . established the Federal Housing Finance Agency ('FHFA'), an independent agency charged with supervising [Fannie Mae]." *Cnty. of Sonoma v. Fed. Hous. Fin. Agency*, 710 F.3d 987, 989 (9th Cir. 2013). HERA also granted the FHFA the power to place Fannie Mae into conservatorship, which the FHFA did on September 6, 2008. *Id.*; *see also* 12 U.S.C. § 4617(a)(2).

As conservator, the FHFA has separate statutory powers. For example, HERA authorizes the FHFA to take action "necessary to put the regulated entity in a sound and solvent condition" and actions as may be appropriate to "preserve and conserve the assets and property of the regulated entity." 12 U.S.C. § 4617(b)(2)(D). Further, FHFA succeeds to "all . . . titles . . . of the regulated entity." 12 U.S.C. § 4617(b)(2)(A).

HERA also "substantially limits judicial review of FHFA's actions as conservator." *Cnty. of Sonoma*, 710 F.3d at 990; *see also Saxton v. Fed. Hous. Fin. Agency*, 901 F.3d 954, 957 (8th Cir. 2018) (calling Section 4617(f) an "anti-injunction provision"); *Robinson v. Fed. Hous. Fin. Agency*, 876 F.3d 220, 227 (6th Cir. 2017) (referring to the statute's "anti-injunction language"); *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 613–14 (D.C. Cir. 2017) (finding HERA limits judicial remedies, including "injunctive, declaratory, and other equitable relief"); *Jacobs v. Fed. Hous. Fin. Agency*, 908 F.3d 884, 894 (3d Cir. 2018) (concluding that Section 4617(f) limits not only equitable relief, but also some monetary claims).

"Except as provided in this section or at the request of the Director, no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator." 12 U.S.C. § 4617(f). Thus, if the action Plaintiff seeks to enjoin here "is a lawful exercise of FHFA's power as conservator of [Fannie Mae], the courts have no jurisdiction over [Plaintiff's] claims, and this [motion must be denied]." *Cnty. of Sonoma*, 710 F.3d at 990 (vacating a district court's order granting a preliminary injunction of an FHFA directive). On the other hand, section 4617(f) is "inapplicable when FHFA acts beyond the scope of its conservator power." *Id.* At 992. The question before the Court, then, is whether foreclosing on a loan when the borrower is delinquent falls within FHFA's conservator powers.

The Court finds that foreclosure does fall within FHFA's conservator powers. HERA "grants the FHFA expansive authority in its role as a conservator. . . . [T]he [FHFA] is authorized to take control of a regulated entity's assets and operations, conduct business on its behalf, and transfer or sell any of its assets or liabilities." *Collins v. Yellen*, 141 S. Ct. 1761, 1776 (2021) (citing 12 U.S.C. §§ 4617(b)(2)(B)–(C), (G)). "When the FHFA exercises these powers, its actions must be 'necessary to put the regulated entity in a sound and solvent condition' and must be 'appropriate to carry on the business of the regulated entity and preserve and conserve [its] assets and property.'" *Id.* (quoting 12 U.S.C. § 4617(b)(2)(D)).

Here, Fannie Mae's loan has been in default since 2009. As conservator, the FHFA assumes Fannie Mae's assets and liabilities, including the loan at issue here. 12 U.S.C. § 4617(b)(2)(A). HERA grants the FHFA, through Fannie Mae, the power to transfer or sell any of its assets or liabilities. 12 U.S.C. § 4617(b)(2)(G). So long as the action taken puts Fannie Mae "in a sound and solvent condition" and helps to "preserve and conserve" Fannie Mae's assets and property, the action is within the FHFA's statutory powers as conservator. 12 U.S.C. § 4617(b)(2)(D). Foreclosure on the property to collect on obligations due to Fannie

Mae is a valid exercise of the FHFA's powers as conservator under HERA to preserve and conserve Fannie Mae's asset. Thus, this Court has no jurisdiction to enjoin the foreclosure.

The Court need not analyze Plaintiff's Emergency Motions under the *Winter* factors because of HERA's anti-injunction provision and makes no conclusions on those arguments or any other arguments Plaintiff raised. Accordingly, Plaintiff's Emergency Motions for Temporary Restraining Order and Preliminary Injunction are denied.

**IV.   CONCLUSION**

The Court denies Plaintiff's Emergency Motion for Temporary Restraining Order (ECF No. 62) and Plaintiff's Emergency Motion for Preliminary Injunction (ECF No. 63).

The parties are directed to file a joint status report within 14 days of this decision concerning the status of the foreclosure and the effect of any foreclosure on Plaintiff's remaining claims and the pending Motion to Dismiss.

DATED THIS 11th day of January 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE